Nossaman LLP
Kurt W. Melchior (SBN 027677)
kmelchior@nossaman.com
S. Ashar Ahmed (SBN 256711)
aahmed@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438

Plaintiffs BULLPEN DISTRIBUTION, INC.,
a California corporation, and JON BRILL

ORIGINAL FILED

FEB 23 2012

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

BULLPEN DISTRIBUTION, INC., a California corporation, and JON BRILL,

Plaintiffs,

vs.

SENTINEL INSURANCE COMPANY, LIMITED,

Defendant.

Case No.: CV 12 0894 DMR

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, DECLARATORY RELIEF AND INSURANCE BAD FAITH

DEMAND FOR JURY TRIAL

Plaintiffs Bullpen Distribution, Inc. and Jon Brill allege as follows:

## JURISDICTION AND VENUE

1. Bullpen Distribution, Inc. ("Bullpen") is and at all times relevant was a California corporation doing business in the State of California, with its headquarters located in San Francisco, California. Jon Brill is and at all times relevant was an officer of Bullpen.

2. At all relevant times, Sentinel Insurance Company, Limited ("Sentinel" or "Defendant") was and now is a corporation domiciled and headquartered in the State of Connecticut.

3. The matter in controversy exceeds the sum of $75,000.

4. Diversity jurisdiction exists under 28 U.S.C. § 1332 (a)(1).

266645_1.DOC 1
COMPLAINT

5. Venue is proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events and omissions giving rise to the claims alleged below occurred in this judicial district.

6. This Court may declare the rights and legal relations of the parties in that this is a case of actual controversy within the Court's jurisdiction.

## FIRST CLAIM FOR RELIEF

### (Breach of Insurance Contract)

7. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 6 of this complaint.

8. Defendant is an insurance company that provided business liability insurance coverage to Plaintiff Bullpen under its policy, 57 SBA BA1216 DX, with the effective dates from May 16, 2011 through May 16, 2012 ( the "Insurance Policy" or "Policy"). As an officer of Plaintiff Bullpen, Plaintiff Brill is and was an insured under that Policy. A true and correct copy of the Insurance Policy is attached hereto as Exhibit ("Ex.") A.

9. At all relevant times, the Insurance Policy has been in full force and effect. Plaintiffs have performed all of their obligations under the Policy or have been excused from such performance.

10. On or about August 5, 2011, a complaint entitled *A.Y. International, Inc., a California corporation v. Jon Brill, an individual, Neil Adelman, an individual, Bullpen Distribution, Inc., dba Bullpen Food & Beverage, a California corporation; et al.,* was filed in the Superior Court of the State of California, County of San Francisco, Case No. CGC-11-513117, hereinafter referred to as the "AYI litigation" or "AYI complaint." The AYI litigation states claims against Plaintiffs Bullpen and Brill and against Bullpen's former employee, Neil Adelman ("Adelman") for misappropriation of trade secrets; breach of fiduciary duty; intentional interference with prospective economic advantage; conversion; untrue and misleading advertising; unfair competition; violation of Penal Code § 502; conspiracy; aiding and abetting; and injunctive relief. A true and correct copy of the AYI Complaint is attached hereto as Exhibit ("Ex.") B.

11. The AYI complaint alleges that Brill and Adelman are two former A.Y. International

1  ("AYI") employees, and that Brill and Adelman, themselves and on behalf of Bullpen, engaged in an
2  unlawful campaign to deliberately disrupt AYI's business, steal AYI's customers and interfere with
3  AYI's relationships with its vendors, designed to cripple AYI so that it could not compete with Brill and
4  Adelman and their new company, Bullpen. *See*, Ex. B.

5  12. As explained below, Plaintiffs' defense to the AYI litigation is covered by the Insurance Policy for the duty to defend and, depending on the outcome of the case, presumably will also be covered for indemnification. The relevant coverage provision is found in the Business Liability Coverage Form, paragraph A.1.a, which reads: "We will pay those sums that the insured becomes legally obligated to pay as damages because of … 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." Ex. A, Business Liability Coverage Form at p. 1.

13. Paragraph A.1.b.(2) of the business liability portion of the Policy provides that: "This insurance applies: … to 'personal and advertising injury' caused by an offense arising out of your business, but only if the offense was committed in the 'coverage territory' during the policy period." Ex. A, Business Liability Coverage Form at p. 1.

14. The "coverage territory" is defined in paragraph G.6.a. of the business liability portion of the Policy as including the United States of America, as well as other places; and the Policy Period is stated on the Declarations page of the Policy to be from May 16, 2011 to May 16, 2012. Ex. A, Business Liability Coverage Form at 20-21; Declarations at p. 1.

15. "Personal and Advertising Injury" is defined in paragraph G.17 of the Business Liability Coverage Form of the Policy as being an

> injury … arising out of one or more of the following offenses:
>
> …
>
> d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

Ex. A, Business Liability Coverage Form at pp. 22-23.

16. All operative events alleged in the AYI litigation occurred within the United States. *See e.g., ,* Ex. B, ¶¶ 3, 4 & 10.

17. Several allegations in the AYI complaint trigger the Insurance Policy's advertising coverage, as Bullpen and Brill are alleged therein to have disparaged AYI or its products. For example, the AYI complaint alleges in relevant part:

> Further, as of May 31, 2011 [a date within the policy period], Bullpen's web site [sic] made false and misleading statements by which Defendants sought to take credit for AYI's business practices as if they [were] their own. The Bullpen web site greeted customers with a false and misleading statement that "[s]ince 1996, the Bullpen team has been helping specialty foods manufacturers and distributers [sic] move excess inventory –quickly and with integrity." By such false and misleading statements Defendants sought to deceive the public, including AYI's customers and vendors …

Ex. B, ¶ 33.

18. The paragraph continues that by its contents,

> the Bullpen web site [sic] sought to trade on the business reputation AYI built over the years with other misleading statements, including "[a]veraging 15 years experience…we [Bullpen] have built trusted relationships with large manufacturers, distributors and national discount retailers," and "[w]e also work with smaller, regional players –some of whom we have worked continuously with for 10 years or more." Such statements *are false and misleading – these are relationships that AYI built with its vendors and customers,* and Brill and Adelman's status as former AYI employees does not give them or Bullpen the right to *pass those achievements off as their own.* (Emphasis supplied.)

Ex. B, ¶33.

19. The paragraph further contains an allegation that the Bullpen website, clearly a general advertisement, "is a direct representation *that Defendants, rather than AYI, timely paid its vendors for 15 years* all to the benefit of Bullpen and to the detriment of AYI. Bullpen … does not have a 15 year track record -- or any track record -- of paying customers promptly. *AYI has that track record.*" (Emphasis supplied), Ex. B, ¶33.

20. The AYI complaint also alleges:

> Defendants further continued to make false and misleading statements through which they seek to take credit for AYI's business relationships and practices *and to pass them off as their own.* For example, Bullpen's web site [sic] states with respect to its customers that … many of [such customers] our team has been dealing with for 10 years or more, with respect to its vendors, Bullpen states "[w]e also work with smaller, regional players – some of whom we have worked continuously with for 10 years or more." *In fact these are AYI's relationships*, which AYI built through years of effort. (Emphasis supplied.)

Ex. B, ¶36.

21. AYI also alleges that "[d]efendants have benefited from their improper activities by realizing revenue and profit that belongs to AYI." Ex. B, ¶40.

22. Paragraph 75 of the AYI complaint, which incorporates its prior allegations including those of paragraph 33, alleges that "Defendants' advertising was untrue or misleading" for various reasons, whereby defendants [Bullpen, Brill et al.] allegedly "falsely represented that Bullpen … is simply a continuation of AYI under a new name, and have sought to trade on AYI's business success and relationships and to pass them off as Defendants' own." Ex. B, ¶ 75. *See also*, Ex. B, ¶80 (these materials are alleged to constitute "false and misleading advertising").

23. The allegations cited above clearly allege that Bullpen and its president, Brill, disparaged AYI and its products, resulting in pecuniary losses to AYI, by claiming AYI's business history as Bullpen's own, through Bullpen's website which was directed to the public at large. Such allegations of disparagement were specific to AYI and raised a potential for indemnity coverage, obligating Defendant to provide defense coverage to plaintiffs for the entire AYI litigation.

24. Accordingly, Plaintiffs promptly and timely notified Defendant in writing of the AYI litigation and demanded that Defendant acknowledge potential indemnity coverage and promptly assume the defense of the AYI litigation.

25. Under the terms and conditions of the Insurance Policy issued by Defendant, it was obligated to defend Plaintiffs against the AYI litigation. However, upon receipt of Plaintiffs' notices

and demands for a defense, Defendant wrongfully and unequivocally denied all coverage under the Insurance Policy and failed and refused to defend Plaintiffs in the AYI litigation.

26. Pursuant to the terms of its Insurance Policy, Defendant has a duty to fully and effectively defend Plaintiffs in the AYI litigation, and to reimburse Plaintiffs for all defense sums paid by Plaintiffs in defending the AYI litigation, including costs, attorneys' fees and interest thereon.

27. Notwithstanding Plaintiffs' repeated demands, Defendant has failed and refused to honor its obligations under the Insurance Policy, to defend Plaintiffs against the AYI litigation and to reimburse Plaintiffs for any and all sums Plaintiffs have been and will be compelled to pay in connection with the defense of the AYI litigation.

28. As a direct and proximate result of Defendant's breach, Plaintiffs have sustained damages, including without limitation, the attorneys' fees and costs incurred in defending the AYI litigation, and will continue to incur such losses as the AYI litigation proceeds.

## SECOND CLAIM FOR RELIEF

**(Declaratory Relief - Duty to Pay Reasonable Defense Costs)**

29. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 28 of this complaint.

30. An actual controversy exists between Plaintiffs and Defendant, and a judicial declaration is required, in that Plaintiffs contend that since Defendant had wrongfully failed and refused to defend Plaintiffs with regard to AYI litigation and had abandoned Plaintiffs and forced Plaintiffs to obtain a defense of such claims without Defendant's assistance, Defendant has an ongoing duty to promptly and fully pay for all reasonable sums expended and incurred by Plaintiffs in their defense of the AYI litigation as that case goes forward, plus interest thereon, including but not limited to the reasonable cost of legal counsel and investigations. Defendant contends to the contrary.

31. Plaintiffs are entitled to a declaration that Defendant must fully and promptly pay Plaintiffs for their defense costs, including attorneys' fees, incurred and to be incurred in the AYI

litigation.

## THIRD CLAIM FOR RELIEF

### (Insurance Bad Faith - Failure to Defend)

32. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 31 of this complaint.

33. In every contract of insurance, including the Insurance Policy issued to Bullpen by Defendant, there is an implied covenant of good faith and fair dealing that the insurer will do nothing to injure or prejudice the insured's rights or benefits due under the policy, or place its own interests before those of its insured.

34. Under the Insurance Policy, Defendant was at all times bound to such implied covenant of good faith and fair dealing.

35. Defendant has violated the covenant of good faith and fair dealing and thereby breached its insurance contract, by failing and refusing, and continuing to fail and refuse, to fully defend Plaintiffs in the AYI litigation and to reimburse Plaintiffs for those sums Plaintiffs were compelled to pay for reasonable attorneys' fees and costs to defend against the AYI litigation.

36. In refusing to honor its obligations under the subject Insurance Policy, Defendant has acted wrongfully, unreasonably, maliciously, oppressively, despicably, and in conscious disregard of Plaintiffs' rights. Such conduct includes, without limitation, the following:

    (a) Defendant fraudulently promised to insure Plaintiffs and to undertake their defense of actions such as the AYI litigation, without any intention of performing such promise;

    (b) Defendant refused to give a reasonable interpretation of its Insurance Policy as applied to Plaintiffs' claims for reimbursement of defense costs and fees, and has acted solely to place its own financial interests above the interests of Plaintiffs, its insureds;

    (c) Defendant failed to provide any justifiable reason for denying Plaintiffs' claim for a defense and reimbursement under the Insurance Policy, even though it has long been on timely notice of such claims. To the contrary, Defendant has adopted an illogical and nonsensical interpretation of its Insurance Policy in its effort to deprive Plaintiffs of their right to a defense and reimbursement under the Policy;

(d) Defendant failed to act reasonably promptly upon Plaintiffs' repeated claims for benefits under the Insurance Policy;

(e) Defendant has failed and refused to implement reasonable standards for the prompt investigation and processing of Plaintiffs' claims for benefits under the Insurance Policy;

(f) Defendant has failed and refused to promptly provide a reasonable explanation of the basis relied on in its Insurance Policy, in relation to the facts and/or applicable law, for the denial of Plaintiffs' claims for benefits under the Insurance Policy; and

(g) Although Plaintiffs provided legal authority to Defendant that explained in detail how the AYI complaint had alleged disparagement of AYI so as to require Defendant to provide coverage of AYI litigation for a defense under existing law, Defendant simply ignored that explanation and continued its refusal to provide coverage by falsely asserting that the AYI complaint did not allege any disparagement of AYI.

37. As a direct and proximate result of such conduct by Defendant, Plaintiffs have sustained compensable damages, including costs of defending the AYI litigation and loss of use of such money, as well as the legal fees and costs incurred in compelling Defendant's performance of its insurance contract, and will continue to incur substantial damages in the future, all in an amount in excess of $75,000.

38. Defendant's conduct as alleged was oppressive, vexatious, outrageous, fraudulent and despicable, was calculated with the intent to harass and annoy Plaintiffs and to force Plaintiffs to submit to the unreasonable and unjustified position taken by Defendant, and was conducted to deprive Plaintiffs of the rights and benefits to which they are entitled under the subject Insurance Policy, in total derogation of Defendant's obligations. Defendant's conduct was committed with conscious and reckless disregard of the consequences to Plaintiffs and of Plaintiffs' rights, so as to justify punitive and exemplary damages against Defendant in an amount sufficient to punish it for the severity of its conduct.

### FOURTH CLAIM FOR RELIEF

**(Declaratory Relief - Duty to Indemnify)**

39. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 38 of this complaint.

40. An actual controversy exists between Plaintiffs and Defendant, in that Plaintiffs contend

that under the terms of the Insurance Policy, Defendant is obligated to indemnify Plaintiffs for any damages which may be awarded against Plaintiffs in the AYI litigation. Defendant contends to the contrary. Accordingly, a judicial declaration is required to determine the rights and obligations of the parties under the Insurance Policy with respect to the Defendant's duty to indemnify Plaintiffs.

41. Plaintiffs are entitled to a declaration that if AYI proves its claims against them, or either of them, Defendant will be required to indemnify Plaintiffs for such loss.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

(1) On the First and Third Claims for Relief, for a judgment in favor of Plaintiffs in the amount of all sums expended by or on behalf of Plaintiffs, or for which Plaintiffs are obligated to pay, in defending against the AYI litigation, plus sums for all consequential damages, including without limitation for the loss of use of such money and prejudgment interest;

(2) On the Second Claim for Relief, that the Court declare the rights, obligations and liabilities of the parties and declare that Defendant has a duty to promptly and fully pay for all sums reasonably expended and incurred by Plaintiffs now and hereafter in the defense of the AYI litigation, plus interest thereon, including but not limited to the reasonable costs of legal counsel and investigations;

(3) On the Third Claim for Relief, for its damages, including Plaintiffs' attorneys' fees incurred in securing the benefits of the Insurance Policy issued by Defendant;

(4) On the Third Claim for Relief, for punitive and exemplary damages in an amount sufficient to punish Defendant for the severity of its conduct;

(5) On the Fourth Claim for Relief, that the Court declare the rights, obligations and liabilities of the parties and declare that Defendant owes a duty to indemnify Plaintiffs with respect to the AYI litigation;

(6) For Plaintiffs' costs of suit incurred herein;

(7) For Plaintiffs' attorneys' fees incurred herein; and

///

266645_1.DOC

COMPLAINT

9

1  (8)     For such other and further relief as the Court deems just and proper.

Dated: February 22, 2012                NOSSAMAN LLP

By _____/s/ Kurt W. Melchior_____
Kurt W. Melchior
Attorney for Plaintiffs
BULLPEN DISTRIBUTION, INC.,
a California corporation, and JON BRILL

266645_1.DOC
COMPLAINT

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury in this action.

Dated: February 22, 2012

NOSSAMAN LLP

By _____
Kurt W. Melchior
Attorney for Plaintiffs
BULLPEN DISTRIBUTION, INC.,
a California corporation, and JON BRILL

266645_1.DOC
COMPLAINT

11