IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BULLPEN DISTRIBUTION, INC. and JOHN BRILL, <br><br> Plaintiffs, <br><br> v. <br><br> SENTINEL INSURANCE COMPANY, LIMITED, <br><br> Defendant. <br> _____/ | No. C 12-0894 CW <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This case arises out of an insurance coverage dispute between Plaintiffs Bullpen Distribution, Inc. and Bullpen President John Brill and Defendant Sentinel Insurance Company. Defendant moves to dismiss Plaintiffs' complaint and Plaintiffs move for partial summary judgment on their duty to defend claim. The matters were heard on May 10, 2012. Having considered oral argument on the motions and the papers submitted by the parties, the Court grants Defendant's motion to dismiss and denies Plaintiffs' motion for partial summary judgment.

BACKGROUND

Plaintiffs make the following allegations in their complaint. Defendant is an insurance company which provides business liability insurance coverage to Bullpen under its policy, 57 SBA BA1216 DX, effective from May 16, 2011 through May 16, 2012. As President of Bullpen, Brill is insured under the policy.

The policy provides coverage for personal and advertising injury as follows: "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." Comp., Ex A, Business Liability Coverage Form at 1. The policy provides the following definition of personal and advertising injury, as relevant to this motion.

> "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:
>
> . . .
>
> d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . .

Comp., Ex. A Business Liability Coverage Form at 22-23.

On August 5, 2011, A.Y. International (AYI), one of the nation's leading surplus close-out wholesalers and liquidators, filed a complaint against Plaintiffs and Neil Adelman in state court entitled, <u>A.Y. International, Inc. v. John Brill, Neil Adelman, Bullpen Distribution, Inc. dba Bullpen Food & Beverage, et al.</u>, No. CGC-11-513117 (AYI complaint), asserting claims of misappropriation of trade secrets, breach of fiduciary duty, intentional interference with prospective economic advantage, conversion, untrue and misleading advertising, unfair competition, violation of California Penal Code section 502, conspiracy, and aiding and abetting and for injunctive relief. The AYI complaint

2

alleged that Brill and Adelman were two former AYI employees who engaged in an unlawful campaign deliberately to disrupt AYI's business, steal AYI's customers and interfere with AYI's relationships with its vendors so that AYI could not compete with Brill and Adelman and their new company, Bullpen.

The AYI complaint specifically alleged:

> As of May 31, 2011, Bullpen's web site made false and misleading statements by which Defendants sought to take credit for AYI's business practices as if they [were] their own. The Bullpen web site greeted customers with a false and misleading statement that "[s]ince 1996, the Bullpen team has been helping specialty foods manufacturers and distributors move excess inventory--quickly and with integrity." By such false and misleading statements Defendants sought to deceive the public, including AYI's customers and vendors, into believing Bullpen had been in business for 15 years and had a proven track record.

Comp., Ex. B, AYI complaint, ¶ 33.

The paragraph continued that

> the Bullpen web site sought to trade on the business reputation AYI built over the years with other misleading statements, including "[a]veraging 15 years' experience . . . we have built trusted relationships with large manufacturers, distributors and national discount retailers," and "[w]e also work with smaller, regional players--some of whom we have worked continuously with for 10 years or more." Such statements are false and misleading--these are relationships that AYI built with its vendors and customers, and Brill and Adelman's status as former AYI employees does not give them or Bullpen the right to pass those achievements off as their own.

Id. The complaint also alleged that the Bullpen website "is a direct representation that Defendants, rather than AYI, timely paid its vendors for 15 years all to the benefit of Bullpen and to the detriment of AYI. Bullpen . . . does not have a 15 year track

3

record--or any track record--of paying customers promptly. AYI has that track record." Id.

AYI also alleged that "Defendants have benefitted from their improper activities by realizing revenue and profit that belongs to AYI," ex. B, ¶ 40, and "falsely represented that Bullpen . . . is simply a continuation of AYI under a new name, and have sought to trade on AYI's business success and relationships and to pass them off as Defendants' own," ex. B, ¶ 75.

Plaintiffs allege that they concluded that the allegations in AYI's complaint claimed disparagement of AYI by Bullpen and its president, Brill, which raised a potential for indemnity coverage and obliged Defendant to defend Plaintiffs in the AYI litigation. Plaintiffs promptly and timely notified Defendant in writing of the AYI litigation and demanded that Defendant acknowledge potential indemnity coverage and assume the defense of the AYI litigation. Defendant denied all coverage under the policy and refused to defend Plaintiffs in the AYI litigation.

Plaintiffs then filed this diversity action against Defendant asserting the following claims for relief: (1) breach of insurance contract; (2) declaratory relief that Defendant must fully and promptly pay Plaintiffs' defense costs incurred and to be incurred in the AYI litigation; (3) insurance bad faith-- failure to defend; and (4) declaratory relief that Defendant has a duty to indemnify Plaintiffs for any damages that might be awarded against Plaintiffs in the AYI litigation.

4

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original

5

complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

California substantive insurance law governs this diversity case. Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 536 (9th Cir 2001). Under California law, interpretation of an insurance policy and whether it provides coverage is a question of law to be decided by the court. Waller v. Truck Ins. Exchange, 11 Cal. 4th 1, 18 (1995).

An insurance carrier "owes a broad duty to defend its insured against claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993); see also Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966) ("We point out that the carrier must defend a suit which potentially seeks damages within the coverage of the policy."). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." Horace Mann Ins., 4 Cal. 4th at 1081. However, the duty to defend is not unlimited; it is measured by the nature and kinds of risks covered by the policy. Waller, 11 Cal. 4th at 19.

The burden is on the insured to establish the existence of a potential for coverage. Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 300 (1993). Any doubt as to whether the facts establish the existence of the defense duty must be resolved in

6

the insured's favor. Id. at 299-200. Once the insured meets its burden, the insurer must establish the absence of any such potential coverage. Id. Thus, "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot." Id.

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." Horace Mann Ins., 4 Cal. 4th at 1081. The duty to defend is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded. Montrose Chem., 6 Cal. 4th at 295.

The parties agree that the sole dispute in regard to Defendant's obligation to defend is whether the allegations in the AYI complaint create a potential for coverage under the "disparagement" clause of the policy. Defendant argues that it has no duty to defend because the AYI complaint does not allege that Bullpen made any derogatory statements about AYI's products or business, or even mentioned AYI by name. Plaintiffs contend that AYI alleges that Bullpen and Brill disparaged AYI or its products by implication.

California courts have held that the term "disparagement" in an insurance policy is meant to cover claims that arise under

7

trade libel. Microtec Research, Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 972-73 (9th Cir. 1994); E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co., 590 F. Supp. 2d 1244, 1252 (N.D. Cal. 2008). Trade libel is "an intentional disparagement of the quality of property, which results in pecuniary damage." Microtech Research, 40 F.3d at 972. Disparagement "may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general." Atlantic Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1035 (2002); Truck Ins. Exchange v. Bennett, 53 Cal. App. 4th 75, 89 (1997). In order to comply with First Amendment requirements, to make a claim of disparagement at the pleading stage, a plaintiff must allege that the injurious falsehood refers specifically to the derogated person or product or that the statement expressly mentions him, her or it or refers to him, her or it by reasonable implication. Total Call Int'l, Inc. v. Peerless Ins. Co., 181 Cal. App. 4th 161, 170 (2010).

Plaintiffs cite E.piphany, 590 F. Supp. 2d at 1252, Burgett, Inc. v. American Zurich Ins. Co., __ F. Supp. 2d __, 2011 WL 5884251 (E.D. Cal.), and Michael Taylor Designs, Inc. v. Travelers Property Cas. Co., 761 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011), for the proposition that disparagement by implication can be alleged where the plaintiffs in the underlying lawsuit, although not mentioned by name in the alleged false advertising, claim that

8

the false advertisements diminished and thereby disparaged their products or businesses. Opp. at 11.

In E.piphany, the underlying complaint filed by Sigma, a direct competitor of E.piphany, alleged that, in its advertisements, E.piphany falsely stated that it was the "only" producer of "all Java" and "fully J2EE" software solutions, even though some of E.piphany's competitors, including Sigma, offered products with those features. E.piphany, 590 F. Supp. 2d at 1253. The court held that these allegations showed disparagement by implication because E.piphany's alleged statements suggested that Sigma's products did not have the same capabilities as E.piphany's products, which implied that E.piphany's products were superior and, thus, Sigma's products were inferior. Id. (citing Knoll Pharmaceutical Co. v. Automobile Ins. Co. of Hartford, 152 F. Supp. 2d 1026, 1036 (N.D. Ill. 2001) (claim for disparagement by implication may lie where a competitor claims that its products are more effective than or superior to other products available).

In Burgett, the underlying lawsuit alleged that Burgett falsely represented to a third party that it owned the "SOHMER" trademark, a trademark that the plaintiff alleged it owned. Id. at *1. Burgett allegedly negotiated and entered into a licensing agreement with the third party and collected compensation from that party under the purported licensing agreement. Id. Relying on E.piphany, the court concluded that liability for indirect disparagement was potentially established because the allegation

9

that Burgett had the superior right to the SOHMER trademark implied that the plaintiff did not have the right to the trademark and, therefore, was inferior. Id. at *6-7.

In Michael Taylor, the court found disparagement coverage where the insured had allegedly promoted cheap "imitation" products by representing that it was selling the underlying plaintiff's products. Id. The court noted that the underlying complaint alleged that consumers were likely to assume that the imitations were the underlying plaintiff's products and concluded that this would dilute and tarnish the plaintiff's trade dress. Id. at 911. The court distinguished other cases which alleged trade dress infringement but did not allege that the infringement was damaging the reputation of the plaintiff's products by claiming that it passed off copies of inferior quality. Id.

Defendant argues that this case is similar to Total Call, 181 Cal. App. 4th at 170, and Jarrow Formulas, Inc. v. Steadfast Ins. Co., 2011 WL 1399805 (C.D. Cal.), where the courts found no disparagement because the plaintiff in the underlying case alleged that the insured falsely advertised the benefits of its own products but did not allege that the insured referred to the plaintiff's products. In Jarrow, the court found no disparagement because the underlying complaint only alleged that the insured falsely advertised the benefits of its own product and did not allege that the insured referred to the plaintiff's products. 2011 WL 1399805, at *6. The court distinguished E.piphany--where

the allegations were that the insured falsely stated that it was the only producer of a certain product, resulting in damage to its competitor--on the grounds that in the case before it there were no allegations that the insured claimed it was the only producer of a certain product or otherwise implied that the underlying plaintiff's products were inferior.  Id. at *7.

The facts of Plaintiffs' case are more similar to those in Total Call and Jarrow than to those in E.piphany, Burgett and Michael Taylor.  AYI does not allege that Bullpen represented or implied that it was the only producer of certain products or services, that it offered services superior to those of its competitors, or that it promoted its inferior products as its competitors' superior products.  In the website advertising of which AYI complains, Bullpen described itself as having the business achievements and longevity that AYI had.  However, in its advertising, Bullpen did not compare itself to AYI or indicate that it was superior to AYI.  Plaintiffs cite nothing to indicate that AYI described Bullpen's advertising as implying that AYI did not also have business achievements and longevity.  As in Total Call and Jarrow, where the insured's false advertising did not refer to the underlying plaintiff or its products or services, Bullpen's allegedly false advertising does not make reference to AYI, directly or by implication.

Plaintiffs have not met their burden of showing that there is a potential for coverage under the policy.  Therefore, Defendant

has no duty to defend Plaintiffs in the underlying litigation, much less a duty to indemnify them for any damages that might be awarded against them in that litigation. Defendant has not breached the insurance contract. Therefore, these claims, as well as the claims for declaratory relief, are dismissed. At the May 10, 2012 hearing, Plaintiffs conceded that the complaint could not be amended to cure this deficiency. Therefore, dismissal is without leave to amend.

The Court does not address Defendant's alternative argument for dismissal. Plaintiffs' motion for partial summary judgment of its duty to defend claim is denied as moot.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted and Plaintiffs' motion for partial summary judgment is denied. Dismissal is with prejudice. A separate judgment shall be entered by the clerk of the court. The parties shall pay their own costs of litigation.

IT IS SO ORDERED.

Dated: 6/1/2012

CLAUDIA WILKEN
United States District Judge

12